**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| FIRST FLOOR LIVING LLC, *et al.*, | ) | Case No. 1:21-cv-18 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Thomas M. Parker |
| | ) | |
| CITY OF CLEVELAND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>OPINION AND ORDER</u>**

Plaintiffs First Floor Living LLC and Lush Designs, LLC purchased separate parcels of real estate in the City of Cleveland, which they intended to rehabilitate and redevelop.  They allege that the City of Cleveland, the Cuyahoga County Land Bank (formally, the Cuyahoga County Land Reutilization Corporation), and two contractors demolished the structures on the properties without notifying Plaintiffs.  By doing so, Plaintiffs complain that Defendants deprived them of property without due process in violation of the Fifth and Fourteenth Amendments.  They also assert several claims under State law.  The City of Cleveland counterclaims, seeking compensatory damages consisting of the costs associated with demolishing the structures.  Each Defendant moves for summary judgment. (ECF No. 33; ECF No. 35; ECF No. 36; ECF No. 37; ECF No. 38.)  For the reasons that follow, the Court **GRANTS** Defendants' motions for summary judgment on each of Plaintiffs' federal claims (the first and second causes of action asserted in the amended complaint) and declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims under

1

State law and the City's counterclaim and third-party claim, which also assert claims under State law.  Therefore, the Court **DISMISSES WITHOUT PREJUDICE** the balance of the action.

## STATEMENT OF FACTS

Plaintiffs' claims arise from the demolition of two different properties and, as relevant to Plaintiffs' federal claims, from facts relating to notice that differ for each property.

### A.     Linwood Property

In October 2018, Lush Designs, LLC purchased the property located at 7410 Linwood Avenue, Cleveland, OH 44105 at a tax foreclosure sale.  (ECF No. 49-1, ¶¶ 3–4, PageID #526.)  Almost a decade earlier, in 2009, the City had condemned the structure on the Linwood Property as a public nuisance.  (ECF No. 33-15, PageID #339–40.)  When Lush Designs purchased the property, the City sent a new-owner letter dated March 1, 2019 to the company's statutory agent, Leslie Gaskins, a member of Lush Designs, and to the Linwood Property itself.  (ECF No. 33-17; ECF No. 33-18; ECF No. 33-19.)  The record confirms delivery to each of these recipients.  (*Id.*)  In fact, on March 19, 2019, a person picked up the letter at the post office.  (ECF No. 33-17, PageID #333.)

That letter enclosed a violation notice that directed the new owner to correct and abate conditions at the property and to notify the City of its rehabilitation plans.  (ECF No. 33-3, PageID #291–92; ECF No. 33-15, PageID #333.)  Additionally, the new-owner letter informed Lush Designs that failure to comply with the notice would result in further enforcement action, including "demolishing, repairing, altering,

securing, boarding, or otherwise abating the public nuisance" and collection of related costs.  (ECF No. 33-15, PageID #333.)  The City also posted the condemnation and violation notice on a boarded-up window at the Linwood Property on March 6, 2019. (ECF No. 33-20; ECF No. 57-5.)

After purchasing the property, Lush Designs invested substantial time and resources into improving and repairing the Linwood Property.  (ECF No. 49-1, ¶ 6, PageID #527.)  These efforts included discussing plans for the property with the City's building department.  (*Id.*)  Shortly after purchase, Ms. Gaskins visited the City's building department and inquired whether the Linwood Property was subject to any City orders.  (*Id.*, ¶ 9).  Ms. Gaskins and a colleague, Charles Stroud, spoke to multiple employees of the City's building department and the Land Bank about the Linwood Property.  (*Id.*, ¶¶ 11 & 12, PageID #528.)  No person suggested that the property was condemned or subject to possible demolition.  (*Id.*, ¶ 11; ECF No. 51-1, ¶ 5, PageID #575.)

In July 2019, Baumann Enterprises, Inc. received notice from the City seeking bids for demolition of the Linwood Property.  (ECF No. 35-1, ¶ 8, PageID #376.)  When it won the bid, the City issued an order to abate the nuisance (ECF No. 35-2, PageID #380), and Baumann Enterprises applied for a demolition permit (ECF No. 35-1, ¶ 12, PageID #377).  On August 12, 2019, the City issued a demolition permit.  (ECF No. 35-3, PageID #382.)  By that date, a subcontractor had removed the asbestos from the Linwood Property at substantial cost.  (ECF No. 35-1, ¶ 22, PageID #378.)  No evidence explains why that remediation did not occur earlier, though the record

3

suggests that the City has a practice of deferring such expenditures until it can recoup them from a private property owner.  Baumann Enterprises began demolition on or about August 12, 2019 and completed it within three weeks.  (*Id.*, ¶¶ 22 & 28, PageID #378–79.)

From the perspective of Lush Designs, it only learned of the demolition of the Linwood Property when Ms. Gaskins visited it and found an empty lot.  (ECF No. 49-1, ¶ 13, PageID #528.)  Lush Designs contends that it did not receive notice that the City had condemned the Linwood Property or that it might be demolished.  (*Id.*, ¶¶ 7–8, PageID #527.)  Although a certified mail receipt for the new-owner letter bears a signature (ECF No. 33-19, PageID #348), it is not Ms. Gaskins' signature and not one she recognizes (ECF No. 49-1, ¶ 15, PageID #528).

## B.  Warner Property

Following an unsuccessful sheriff's sale, the property located at 4400 Warner Road in Cleveland, Ohio, which is located about a block away from a public grade school for girls, was forfeited to the State in 2016.  (ECF No. 33-1, PageID #282; ECF No. 33-2, PageID #284–87.)  On July 28, 2016, the City posted condemnation and violation notices at the property.  (ECF No. 33-3, ¶ 3, PageID #289.)  A series of photographs in the record show the postings.  (ECF No. 33-4.)  On September 1, 2016, the City sent to the State of Ohio as the property's new owner a violation notice and notice for a necessary rehabilitation plan.  (ECF No. 33-3, ¶ 3, PageID #289; ECF No. 33-5.)

4

Although the parties agree that the Land Bank next owned the Warner Property, the record does not reflect how or when that came to be. Whatever the case, First Floor Living purchased the Warner Property from the Land Bank in March 2018. (ECF No. 33-8; ECF No. 48-1, ¶ 5, PageID #507–08.) Upon purchase, First Floor Living invested substantial time and resources renovating the property. (ECF No. 48-1, ¶¶ 5 & 7, PageID #507–08; ECF No. 50-1, ¶¶ 5 & 6, PageID #548–49.) After First Floor Living acquired the Warner Property, the City of Cleveland sent a new-owner letter dated January 22, 2020 to First Floor Living. (ECF No. 33-9.) That letter provided notice that the City had determined that the property was a public nuisance and required a rehabilitation plan. (*Id.*, PageID #321.) The City sent this new-owner letter both to the Warner Property and to Joon Kim, who is listed as the statutory agent for First Floor Living. (*Id.*; *id.*, PageID #323; ECF No. 33-3, ¶ 3, PageID #290–91.) Both letters were returned undelivered. (ECF No. 33-3, ¶ 3, PageID #291; ECF No. 33-11; ECF No. 33-12.) The City's records reflect that a condemnation notice and violation notice were posted at the Warner Property on January 22, 2020. (ECF No. 33-3, ¶ 3, PageID #291; ECF No. 33-13.)

On August 5, 2020, the City issued a permit to Laster LLC for demolition of the Warner Property. (ECF No. 37-2.) On August 16, 2020, Laster delivered its equipment to the property for the demolition. (ECF No. 37-1, ¶ 4, PageID #401.) When Don Laster arrived at the property on August 17, 2020 to begin demolition, he found a note on his equipment "purportedly from the property owner(s) telling me not to go forward with the demolition." (*Id.*, ¶ 5.) Another person, who identified himself

as an owner of the property, told Laster he did not have authority for the demolition. (*Id.*, ¶ 6, PageID #402.)  Calls to the authorities and the involvement of a police officer confirmed that the demolition could proceed, and it did.  (*Id.*, ¶¶ 7–10.)

From the perspective of First Floor Living, it had no notice of the possibility of demolition until August 16, 2020, when a neighbor called David Bond, a member of the First Floor Living who lived around the corner from the property.  (ECF No. 48-1, ¶¶ 1, 4, 6, 8, 10 & 11, PageID #507–09.)  Bond says that demolition began on the Warner Property the same day.  (*Id.*, ¶ 11, PageID #508–09.)

## STATEMENT OF THE CASE

In January 2021, Lush Designs and First Floor Living sued the City of Cleveland, Laster LLC, Baumann Enterprises, and the Land Bank.  (ECF No. 1.) Plaintiffs later filed a first amended complaint, in which they allege that all Defendants violated (1) their due process rights by razing the structures on the Linwood Property and the Warner Property without adequate notice (Count 1) and (2) the Fifth Amendment by demolishing the structures on the properties at issue without just compensation (Count 2).  (ECF No. 19, ¶¶ 41–64, PageID #183–87.) Further, Plaintiffs claim that the Land Bank was negligent per se for failing to notify First Floor Living at the time of sale that the City had condemned the Warner Property (Count 3).  (*Id.*, ¶¶ 65–69, PageID #187–88.)  Finally, Plaintiffs allege that Laster and Baumann Enterprises trespassed and unlawfully converted the structures in demolishing the structures (Counts IV and V).  (*Id.*, ¶¶ 70–83, PageID #188–89.)

6

The City counterclaims, seeking to recover abatement costs for each property. (ECF No. 27, ¶¶ 55–77, PageID #240–42.) These costs allegedly amount to $92,058.33 for the Linwood Property (*id.*, ¶¶ 70–76, PageID #241–42) and to $9,849.33 for the Warner Property (*id.*, ¶¶ 67–69, PageID #241).

Separately, each Defendant moves for summary judgment. (ECF No. 33; ECF No. 35; ECF No. 36; ECF No. 37.) The City of Cleveland also moves for summary judgment on its counterclaim. (ECF No. 38.) Plaintiffs oppose all but the Land Bank's motion for summary judgment. (ECF No. 48; ECF No. 49; ECF No. 50; ECF No. 52.)

## ANALYSIS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court must view evidence in the light most favorable to the non-moving party. *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

On a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the claim or defense at issue. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n.12 (6th Cir. 1989); *Chappell v. City of Cleveland*, 584 F. Supp. 2d 974, 988 (N.D. Ohio 2008). After discovery, summary judgment is appropriate if the nonmoving party fails to establish "an element essential to that party's case and upon

which that party will bear the burden of proof at trial." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp.*, 477 U.S. at 322). Then, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Id.* However, if "the evidence is merely colorable or is not significantly probative," summary judgment for the movant is proper. *Id.* The "mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48). To determine whether a genuine dispute about material facts exists, it is not the Court's duty to search the record; instead, the parties must bring those facts to the Court's attention. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). Ultimately, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251.

## I.     Plaintiffs' Objections to Evidence on Summary Judgment

On summary judgment, the central inquiry "determin[es] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.  Generally, a district court "will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter." *Kermavner v. Wyla, Inc.*, 250 F. Supp. 3d 325, 329 (N.D. Ohio 2017) (citing *Anderson*, 477 U.S. at 249).  A district court examines only "disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248.  "It is well settled that only admissible evidence may be considered by the trial court ruling on a motion for summary judgment." *Wiley v. United States*, 20 F.3d 222, 225–26 (6th Cir. 1994).  As relevant here, "hearsay evidence cannot be considered on a motion for summary judgment." *Wiley*, 20 F.3d at 225–26; *see also* Fed. R. Civ. P. 56(c)(4) (relating to affidavits).

Plaintiffs object to several pieces of evidence on which Defendants rely in support of summary judgment:  (1) copies of certified mail receipts showing delivery of the new-owner letter and violation notice to Lush Designs (ECF No. 33-16; ECF No. 33-17); (2) the photograph of the Lush Designs new-owner letter posted at the Linwood Property (ECF No. 33-20); and (3) the City's interoffice document noting that

9

the building department posted the new-owner letter sent to First Floor Living at the Warner Property (ECF No. 33-13).  The Court considers each objection in turn.

### I.A.    USPS Mail Receipts

Plaintiffs object to the certified-mail notices from the postal service for the new-owner letter sent to the Linwood Property and to Leslie Gaskins.  (ECF No. 50, PageID #543–44; ECF No. 33-16; ECF No. 33-17.)  Specifically, Plaintiffs argue that the City provides no "indication as to who sent the notices or kept the records." (ECF No. 50, PageID #543.)

Both notifications fall under the exception to the hearsay rule for records of a regularly conducted activity.  *See* Fed. R. Evid. 803(6).  Here, State law authorizes a municipal corporation such as the City of Cleveland to provide notice by certified mail before proceeding with the removal of buildings or other structures.  Ohio Rev. Code § 715.26(B).  Therefore, retaining certified-mail receipts generated by the United States Postal Service is a regular and proper part of the City's practices and meets the other prerequisites for application of this exception.  (*See* ECF No. 33-3, ¶ 4–6, PageID #293.)  As for the specific objection that the City did not identify who sent the notices or kept the records, the City's declaration identifies the records as generated and maintained by the City's Department of Building and Housing.  (ECF No. 33-3, ¶ 3, PageID #289.)  Nor do Plaintiffs show or call into question that the source of these documents is untrustworthy.  For these reasons, the Court overrules this objection.

### I.B.    Photograph of the Linwood Property

Plaintiffs object to "a blurry picture of the Linwood Property purporting to evidence the posted notice." (ECF No. 50, PageID #543.)  Plaintiffs question the trustworthiness of the picture because the "image of the notice posted on the building shows only an image of the building with very little additional detail." (*Id.*, PageID #544.)  Further, Plaintiffs fault the City for not identifying who took the picture or providing information about the internal processes and procedures by which such pictures are maintained to ensure their accuracy.  (*Id.*)

Contrary to Plaintiffs' claim, the photograph shows the notice posted on a boarded-up window on the Linwood Property, near its address.  (ECF No. 33-20, PageID #349.)  Although the two postings on that boarded-up window are not legible, one of them clearly says "CONDEMNED" in big, block letters.  (*Id.*)  On its face, then, the content of the picture supports the City's declaration, which says that it posted a violation and condemnation notice on the property on March 6, 2019.  (ECF No. 33-3, ¶ 3, PageID #293.)  Although the City did not identify the specific person who took the photo, the City also identifies the picture as generated and maintained by the City's Department of Building and Housing.  (ECF No. 33-3, ¶¶ 3 & 4–6, PageID #289 & #293.)  Plaintiffs do not provide any evidence or anything other than unsupported assertions that the source of these documents is untrustworthy.

Accordingly, this photograph satisfies Rule 803(6) as an exception to the hearsay rule.  Under that an exception, records of a regularly conducted activity made at or near the time by someone with knowledge and kept in the normal course as part

of a regular activity do not constitute hearsay, regardless of the declarant's availability.  Fed. R. Evid. 803(6).  In addition to the declaration of the interim director of the City's Building and Housing Department (ECF No. 33-3), the City's Chief Building and Housing Inspector, attests that he personally affixed the notice on the Linwood Property and photographed the posting.  (ECF No. 57-5, ¶¶ 2, 4–7, PageID #644–45.)

Plaintiffs rely on *Ellis v. Jamerson*, 174 F. Supp. 2d 747, 752–53 (E.D. Tenn. 2001), to support their argument that the City fails to show that it satisfies the requirements of Rule 803(6).  But the record at issue in that case involved oral statements at a press conference, and the City provides sufficient detail about the photograph of the Linwood Property to bring it within Rule 803(6).  For these reasons, the Court overrules this objection.

### I.C.    Evidence of Posting at the Warner Property

The City's evidence that it posted a violation notice at the Warner Property consists of disjointed handwritten notes on what appears to be a post-it note.  (ECF No. 33-13, PageID #331.)  The third line of those notes reads:  "NOL [new-owner letter] + Post done 1/22/20."  (*Id.*)  The City does not identify the author of the note.  (*See* ECF No. 33-3, ¶ 3, PageID #291 (Exhibit L).)  Although the City's evidence states that its regular practice was to photograph the posting of notices (ECF No. 33-3, ¶ 5, PageID #293), the only photographs of postings at the Warner Property date to 2016 (ECF No. 33-4, PageID #294–97.)  Although various of the postings shown in those photographs are illegible, one clearly reads:  "This Structure is in a DANGEROUS

12

CONDITION and has been CONDEMNED.  Its Use Is Prohibited By" the City of Cleveland's Department of Building and Housing.  (ECF No. 33-4, PageID #294.)

In reply, the City supplies an additional declaration from its chief building inspector, who also manages its demolition bureau.  (ECF No. 57-6, ¶ 2, PageID #652.) He attests to the City's regular practices and procedures once a property is condemned.  (*Id.*, ¶ 4–5, PageID #653.)  Those procedures include posting a condemnation notice on the property.  (*Id.*, ¶ 5(c).)  This declaration makes no mention of photographing the posting.  Although this declaration does not go so far as to state that the City complied with its practices and procedures for the Warner Property, the City argues for its admission under Rule 406 as evidence of its routine practices.  "Evidence . . . of an organization's routine practice may be admitted to prove that on a particular occasion . . . the organization acted in accordance with the . . . routine practice."  Fed. R. Evid. 406.

Plaintiffs use the cases on which the City relies to argue that such evidence is not appropriate for summary judgment.  (ECF No. 58-1, PageID #670.)  *Bowman v. Corrections Corp. of America*, 350 F.3d 537, 549 (6th Cir. 2003), involved the admissibility of habit evidence at trial under plain-error review.  Similarly, *Martin v. Thrifty Rent A Car*, 145 F.3d 1332, 1998 WL 211786, at *4–6 (6th Cir. 1998) (table), involved appeal from the admission of habit evidence at trial after the opposing party had a full opportunity to test the evidence.  And in *United States v. Syouf*, No. 3:98-cv-7175, 1999 WL 689953, at *3 (N.D. Ohio Mar. 26, 1999), the court relied on evidence of a routine practice in a denaturalization order but did so following a

13

hearing. In each of these cases, Plaintiffs note, courts relied on evidence under Rule 406 only after a hearing that included a full opportunity to test the evidence.

But nothing about Rule 406 has a carve out from the normal rules of summary-judgment practice. *See, e.g.*, *Bell v. Conrail*, 299 F. Supp. 2d 795, 800 (N.D. Ohio 2004) (admitting Rule 406 evidence on summary judgment). The City tendered a declaration, as Rule 56 requires, attesting to its routine practices of posting notices, and Rule 406 itself provides that such evidence can "prove that on a particular occasion" the organization acted pursuant to these practices. Fed. R. Evid. 406. Notably, the City presents evidence that it has followed these routine practices in some 12,000 demolitions since 2006. (ECF No. 57-6, ¶ 14, PageID #655.) This number of instances supports the foundational requirements for admissibility under Rule 406. *See, e.g.*, *Bell*, 299 F. Supp. 2d at 800. Therefore, the Court overrules Plaintiffs' objection and will consider this evidence on summary judgment.

## II.    Due Process Claims (Count 1)

Plaintiffs argue that the City and its agents failed to provide adequate notice under the Due Process Clause of the Fourteenth Amendment before razing the buildings on the Linwood and Warner Properties. Due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action" before the government may take property. *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). When notice is required as a matter of due process, "the Constitution judges the adequacy of notice from the perspective of the sender, not the recipient, which means that the individual

14

recipient's lack of due diligence will not negate otherwise reasonable efforts at notice." *Ming Kuo Yang v. City of Wyoming, Mich.*, 793 F.3d 599, 602 (6th Cir. 2015) (cleaned up). "When notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315. But actual notice is not required. *See Dusenbery v. United States*, 534 U.S. 161, 170 (2002).

This reasonableness inquiry relies heavily on the circumstances of the case. Typically, when a notice is returned to the post office or sender that notice might be inadequate under the "desirous sender" standard. *Jones v. Flowers*, 547 U.S. 220, 229–30 (2006). But the failure of notice does not alone establish constitutional inadequacy; rather, it puts the sender on notice that it must take reasonably available additional steps to apprise the interested party, regardless of whether actual notice is perfected. *Id.* Nonetheless, the government need only make a significant, not exhaustive, effort to ascertain a means of notifying the interested party. *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 285 (6th Cir. 2005). It need not review every governmental record or database for updated contact information. *Id.* Posting notice at the property constitutes one reasonable measure, which the Supreme Court has recognized as a "singularly appropriate and effective way of ensuring that a person is actually apprised of proceedings against him." *Jones*, 547 U.S. at 236 (cleaned up); *see also Yang*, 793 F.3d at 603 (same). But if there are no reasonable additional

steps that the government can take to provide notice upon return of notice letter, "it cannot be faulted for doing nothing."  *Jones*, 547 U.S. at 234.

### II.A.  City of Cleveland

In addition to these constitutional principles of due process, State statutes and local ordinances require notice to property owners and govern the demolition of buildings and other structures.  Under Section 715.26(B) of the Ohio Revised Code, a municipal corporation such as the City of Cleveland may "provide for the inspection of buildings or other structures and for the removal . . . of insecure, unsafe, or structurally defective buildings."  Ohio Rev. Code § 715.26(B).  This statute provides that the City, "at least thirty days prior to the removal[,] . . . shall give notice by certified mail of its intention with respect to such removal . . . to owners of record of such property."  *Id*.

Further, the City of Cleveland's Codified Ordinances outline the procedures by which it regulates buildings and other structures.    Section 3103.09(b)(1) provides that the City can declare a building a nuisance that is an "unsafe structure" or "injurious to or a menace to the public health, safety or welfare, or [is] structurally unsafe, unsanitary" or otherwise unsafe, a fire hazard, vacant, or "a hazard to the public health, safety or welfare by reason of inadequate maintenance, dilapidation, obsolescence or abandonment."  Cleveland Codified Ordinances § 3103.09(b)(1).  All unsafe structures or conditions are declared public nuisances.

Where a building is a public nuisance, Cleveland's ordinances provide that it "shall forward by certified mail to the owner, agent or person in control of the

building, . . . a written notice of violation stating the defects in the building or structure." *Id.* § 3103.09(e)(1). This notice shall require the owner "to abate the nuisance condition of the building or structure by correction of the violations and defects . . . or by demolition and removal of the building, structure, or a portion of those." *Id.* Also, the notice shall state that "if the nuisance is not abated within the required time that the Director may take appropriate action to repair, remove, or otherwise abate the public nuisance and that the owner, agent or person in control shall be responsible for the costs." *Id.* If, after a reasonable and diligent search, the City cannot find the person to whom the notice is addressed, "then the notice and order shall be sent by certified mail to his or her tax mailing address, if available, . . . and a copy of the notice shall be posted in a conspicuous place on the premises to which it relates. The mailing and posting shall be deemed legal service of the notice." *Id.* § 3103.09(b)(2).

If the owner neglects the notice or fails to repair, rehabilitate, or demolish the structure, the City "may take appropriate action to demolish and remove an unsafe structure or to remove or abate any condition that is defined as a nuisance." *Id.* § 3103.09(h)(1). Before beginning demolition, the City must provide notice thirty days in advance. *Id.* § 3103.09(h)(2). But notice separate from notice of violation is not required. *Id.* The owner of the structure is liable for any and all expenses if the City of Cleveland demolishes, boards up, or otherwise abates any nuisance of a building that is an unsafe structure, including but not limited to attorneys' fees, court

costs, and costs of inspection and for administrative staff and support staff. *Id.* § 3103.09(k).

### II.A.1. Notice to Lush Designs (Linwood Property)

The City argues that it is entitled to summary judgment because it provided constitutionally adequate notice to Lush Designs when it sent the new-owner letter via certified mail to both the Linwood Property and to Gaskins, a member of Lush Designs, and posted the notice at the Linwood Property. (ECF No. 33, PageID #268.) The Court agrees. The new-owner letter notified Lush Designs of both the condemnation determination and the demolition order. (ECF No. 33-15.) Further, the record shows that both letters were successfully delivered, and the new-owner letter was also posted at the Linwood Property. (ECF No. 33-16; ECF No. 33-17; ECF No. 33-20.)

Relying on a declaration from Gaskins, Plaintiffs argue that the City never notified Lush Designs of the condemnation and subsequent demolition. (ECF No. 49-1.) Specifically, it argues that (1) someone other than the intended recipients received the mailed letters and (2) when Lush Designs purchased the Linwood Property, the City reassured Gaskins that there were no outstanding violations. (*Id.*) Even if true, however, due process does not require actual notice. *Jones*, 547 U.S. at 226; *Dusenbery*, 534 U.S. at 170.

Plaintiffs rely on the Supreme Court's decision in *Jones* to argue that, where a municipality knows that its efforts to provide notice to a property owner fall short, due process requires additional steps. Fair enough. But due process judges the

adequacy of notice from the perspective of the sender, not the recipient. *Ming Kuo Yang*, 793 F.3d at 602 (citing *Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013)). Here, the record shows that the City sent two certified letters containing notices of violation with sufficient information advising of the need to abate the nuisance and warning of demolition. The postal service informed the City that both letters were delivered. (ECF No. 33-16.) And the record shows that the City checked the tracking information for the letters, which shows that one was picked up in person at the post office. (ECF No. 33-17.) Even though the signature on the certified mail receipt does not appear to be that of Gaskins, the City may reasonably assume that the signatory was another representative of Lush Designs. Moreover, particularly in light of the other information from the postal service reflecting delivery, the City had fairly grounded and objective reasons to think that notice made its way to the intended recipients.

On these facts, the City acted reasonably to assure that it provided notice. Therefore, the subsequent efforts *Jones* requires do not come into play. In any event, the City posted notice of condemnation on the Linwood Property on March 6, 2019. As for Plaintiffs' contention that City employees provided assurances that there were no issues with the property, such an argument has no relevance to the due-process notice inquiry. *See Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 312–13 (6th Cir. 2021) (rejecting due-process challenge where the plaintiff had actual knowledge of condemnation). Even crediting Plaintiffs' declaration that the City misled Lush Designs by providing it inaccurate or false information, the due-process analysis

19

focuses on the City's efforts to provide notice, and transfer of ownership does not erase the City's prior efforts to provide notice to interested parties. *See Keene Grp.*, 998 F.3d at 319 (Readler, J., concurring). To hold otherwise "would require the City . . . to halt and restart nuisance proceedings every time title to a nuisance property changes hands unduly hampering the state's interest in demolishing blighted properties." *Keene Grp., Inc. v. City of Cincinnati*, No. 1:19-CV-730-WOB, 2020 U.S. Dist. LEXIS 123134, 2020 WL 3980304, at *3 (S.D. Ohio July 14, 2020) (cleaned up).

In this respect, the record shows that the City reasonably believed Lush Designs or its representatives received two certified letters providing notice, which was also posted on the property. Due process requires notice reasonably calculated under the circumstances to reach its intended recipient. These facts show that the City discharged its obligations to meet this minimal requirement as a matter of law.

## II.A.2. Notice to First Floor Living (Warner Property)

Similarly, the City maintains that it is entitled to summary judgment because it provided First Floor Living with adequate notice. (ECF No. 33, PageID #268.) Unlike the circumstances related to the Linwood Property, the adequacy of the notice the City provided has more complications and presents a closer call. First, there is no dispute that the City sent notice to the Warner Property and to First Floor Living's statutory agent. But the record shows that each was returned undelivered. (ECF No. 33-6; ECF No. 33-7.) Relying solely on the two undelivered mail notices, the City would be hard pressed to show that it took measures reasonably calculated to notify First Floor Living of the condemnation and subsequent demolition. *See Jones,* 547

U.S. at 234. Indeed, in such circumstances, the Supreme Court recognizes that due process requires additional efforts reasonably calculated to provide notice. *Id.*

When it comes to real property, "posting notice on [the] property is 'a singularly appropriate and effective way of ensuring that a person . . . is actually apprised of proceedings.'" *Id.* at 236 (quoting *Greene v. Lindsey*, 456 U.S. 444, 452–53 (1982)). For this reason, the City points to posting of the notice at the Warner Property on January 22, 2020 as constitutionally adequate notice. But the record is not clear regarding whether that posting actually occurred. The evidence for it amounts to little more than barely decipherable chicken scratch. Also, the meaning of that note is unclear. It states "NOL + Post 1/22/20." (ECF No. 33-13.) "Post" might mean posting of the new-owner letter and a violation notice at the Warner Property. But it might also mean postmarked. January 22, 2020 is the same day the new-owner letter was postmarked to the recipients the City intended to reach.

Construed in favor of Plaintiffs, the evidence in the record on summary judgment with respect to posting on the property shows that the City has a routine practice of posting and photographing the posted notice. Indeed, the record shows that it did so on the Warner Property in 2016. But the record contains no photographic evidence it did so again in 2020. Instead of photographic evidence, the City relies on its routine practice and the handwritten note that posting occurred. Because that handwritten note is sketchy, at best, the Court disregards it. Even so, Plaintiffs point to no evidence in the face of an established routine practice that the posting did not occur. That First Floor Living's ownership did not see any posting

(ECF No. 48-1, ¶ 10, PageID #508) goes to actual knowledge but does not mean that the City failed to follow its practice in this one instance.  Perhaps it did not.  Such a claim amounts to little more than speculation.

For purposes of due process, posting in 2020 is not the only notice that matters. When ownership of the Warner Property changed hands after 2016, the City's policies and procedures required new notice and posting.  (ECF No. 57-6, ¶ 6(e), PageID #653–54.)  But those local requirements do not bear on the due-process analysis.  As already noted, because the due-process analysis focuses on the sender, transfer of ownership does not erase the City's prior efforts to provide notice to interested parties.  *See Keene Grp.*, 998 F.3d at 319 (Readler, J., concurring).  When First Floor Living acquired the Warner Property, the City was not constitutionally required to restart its processes for addressing blighted or abandoned properties.  *Keene Grp.*, 2020 U.S. Dist. LEXIS 123134, 2020 WL 3980304, at *3.  In addition to the City's evidence of its practices regarding posting, the overall efforts that the City undertook meet the constitutional minimum of due process.

Plaintiffs argue that the intervening time between the first notices and demolition of the structures undermines the City's claim that it made constitutionally adequate efforts to provide notice.  Plaintiffs rely on three cases, each of which is distinguishable.  First, they cite *Hamilton v. City of Rochester*, No. 99-CV-6341P, 2004 WL 1125156 (W.D.N.Y. Mar. 31, 2004).  There, a four-year delay occurred between the final hearing and demolition.  The *Hamilton* Court found dispositive the facts that the plaintiff pulled permits, began construction, and was in communication

with several city officials to abate the nuisance. After the plaintiff pulled permits and put the city on notice that it had begun work on the property, the city did not issue a new notice of its intent to begin demolition. *Id.* at *13–14. Here, the record contains no evidence Plaintiffs secured permits or otherwise placed the City on notice that they intended to abate the conditions of the property.

Second, in *Ellis v. City of Montgomery*, 460 F. Supp. 2d 1301 (M.D. Ala. 2006), the city employed a constitutionally deficient method to identify the correct property owner. There, the city checked an outdated records database when more updated property records were readily obtainable. No such issue applies here.

Third, in *Kornblum v. St. Louis County*, 72 F.3d 661 (8th Cir. 1995), the local government did not attempt to inform the new owner of demolition before demolishing the property. *Id.* at 662. Here, the City attempted to notify First Floor Living and prior owners.

Moreover, the City undertook reasonable and fairly extensive efforts beginning in 2016 to provide notice. After condemning the Warner Property in 2016 and posting the Condemnation and Violation Notice at the Warner Property, the City sent a violation notice and advised of the need for a rehabilitation plan to the State of Ohio. As the Warner Property changed hands, the City diligently issued notice of the violations to the new owners. (ECF No. 33-9; ECF No. 33-10; ECF No. 11; ECF No. 12.) And before the City issued the demolition permit, it searched its records to ensure that First Floor Living had not secured a permit to improve the building or otherwise address the violations. (ECF No. 33-14; ECF No. 57-6, ¶ 13, PageID #655.)

In this way, the City acted to notify interested parties and monitor any steps to abate the nuisance. These facts show that the City took reasonably calculated measures starting in 2016 to notify interested parties of condemnation of the Warner Property.

To be sure, the City could have avoided this dispute by properly documenting the notice posted on the Warner Property in 2020 or through different policies better designed to facilitate needed investment in the City. But those administrative and policy decisions, though unfortunate, do not show a violation of due process, and the Court so concludes.

### II.B.   Baumann Enterprises and Laster

Assuming without deciding that the Baumann Enterprises and Laster acted as agents of the City in demolishing the Linwood and Warner Properties, the Court concludes, for the same reasons as above, that these Defendants did not violate Plaintiffs' due-process rights.

### II.C.   The Land Bank

Though Plaintiffs assert that the Land Bank violated their due-process rights, they provide no evidence that the Land Bank was involved in the City's condemnation proceedings or took part in the demolition of the Warner Property. Accordingly, the Land Bank is entitled to judgment as a matter of law.

*     *     *

For the above reasons the Court **GRANTS** summary judgment in favor of Defendants on Plaintiffs' due-process claims in Count 1.

### III.    Takings Clause Claim (Count 2)

Plaintiffs abandon their takings claim, conceding that Defendants' actions do not violate the Fifth Amendment.  (ECF No. 50, PageID #534 n.4; ECF No. 52, PageID #586 n.3.)   Indeed, as Plaintiffs acknowledge, under the law of this Circuit, "[d]emolition . . . to enforce building codes or abate a public nuisance does not constitute a taking."  *Davet v. City of Cleveland,* 456 F.3d 549, 553, 554 (6th Cir. 2006).  Therefore, the Court **GRANTS** summary judgment in favor of Defendants on Count 2.

### IV.    State-Law Claims

Under 28 U.S.C. § 1367(a), district courts may exercise supplemental jurisdiction over all other claims that are so related to those in the action within the Court's original jurisdiction that they form part of the same case or controversy. Further, Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction where, as here, the district court has dismissed all claims over which it has original jurisdiction.

In deciding whether to exercise supplemental jurisdiction, the district court should consider factors such as "comity, judicial economy, convenience, and fairness." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 196 F.3d 617, 620–21 (6th Cir. 1999). "[G]enerally '[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.'"  *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 585 (6th Cir. 2011) (quoting *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)); *see also*

25

*Juergensen v. Midland Funding, LLC*, No. 5:18-cv-1825, 2018 WL 5923707, at *2 (N.D. Ohio Nov. 13, 2018).  After reviewing the record in this matter, the Court declines to exercise its discretion to retain supplemental jurisdiction over the parties' remaining claims and counterclaims under State law.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions for summary judgment on each of Plaintiffs' federal claims (the first and second causes of action asserted in the amended complaint) and declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims under State law and the City's counterclaim and third-party claim.  Therefore, the Court **DISMISSES WITHOUT PREJUDICE** the balance of the action.

**SO ORDERED.**

Dated:  February 7, 2022

_____
        J. Philip Calabrese
        United States District Judge
        Northern District of Ohio

26